**Sultan Hanifa ABDULLAH, Plaintiff,**

v.

**Wali FARD, et al., Defendants.**

No. 1:95 CV 2059.

United States District Court,
N.D. Ohio,
Eastern Division.

July 7, 1997.

---

Sultan Hanifa Abdullah, Mansfield, OH, pro se.

Robert C. Angell, Office of Atty. General, Columbus, OH, for Wali Fard, Reginald Wilkinson, Norman Rose, William H. Miller and Joyce Grose-Griffith.

### MEMORANDUM OF OPINION AND ORDER

NUGENT, District Judge.

This matter comes before the Court upon the Report and Recommendation of a Magistrate Judge of this Court submitted on March 21, 1997, (Document # 30) in which the Magistrate Judge recommends that the parties' cross motions for summary judgment be denied. For the reasons stated below, the Magistrate Judge's Report and Recommendation (Document # 30) is NOT ADOPTED, the Plaintiff's Motion for Summary Judgment (Document # 25) is DENIED, and the Defendants' Motion for Summary Judgment (Document # 23) is GRANTED.

### Procedural History

Plaintiff, Sultan Hanifa Abdullah, brought this prisoner petition pursuant to 42 U.S.C. § 1983 while incarcerated at the Lorain Correctional Institution ("LCI") against defendants Wali Fard, the Imam at LCI, Norman Rose, Superintendent of LCI, William H. Miller, Deputy Warden of Operations at LCI, Joyce Grose–Griffith, Food Service Director at LCI, and Reginald Wilkinson, Director of Ohio Department of Rehabilitation and Corrections, on September 25, 1995. Plaintiff

alleges that Defendants denied him his First Amendment rights to the free exercise of his religion by refusing to provide him with Halal (ritually slaughtered) meat. Plaintiff also contends that defendants have deprived him of equal protection of the laws because defendants provide kosher meals to Jewish inmates while refusing to provide Halal meat to Muslim inmates.[1]

The case was referred to Magistrate Judge Jack B. Streepy on November 8, 1995. Defendants filed a Motion for Summary Judgment on May 23, 1995. Plaintiff filed a Motion for Summary Judgment on June 3, 1996. Defendants filed a Memorandum in Opposition to Plaintiff's Motion for Summary Judgment on June 13, 1996, and a Supplemental Memorandum in Support of their Motion for Summary Judgment on March 12, 1997. Plaintiff filed a Supplemental Memorandum in Support of his Motion for Summary Judgment on March 21, 1997.

Magistrate Judge Streepy issued a Report and Recommendation on March 21, 1997, recommending that the cross motions for summary judgment be denied. In his Report the Magistrate determined that there was a genuine issue of fact regarding whether the eating of Halal meat is a fundamental tenet of Plaintiff's religion; and if it is, there is a question of fact as to whether the prison's failure to supply the meat "is reasonably related to legitimate penological interests" under the application of the four factors set out by the Supreme Court in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Further, the Magistrate Judge found an issue of fact on Plaintiff's equal protection claim with respect to the application of the four *Turner* factors and determined that a discriminatory motivating purpose could be inferred in this case because Defendants did not submit evidence setting forth the motivating factor(s) that led to the Ohio Department of Rehabilitation and Corrections' ("ODRC") policy to provide kosher food to Jewish inmates but not to provide Halal meat to Muslim inmates. Defendants filed timely Objections to the Magistrate Judge's Report and Recommendation on March 31, 1997. Defendants filed a Motion to Supplement the Record with the Affidavit

of Rev. Marloe H. Karlen on April 3, 1997. Defendants state that the Affidavit of Rev. Karlen was unavailable at the time that Defendants' Objections to the Report and Recommendation were filed. Plaintiff has not objected to Defendants' Motion to Supplement the Record, thus, the Karlen Affidavit will be considered herein.

### Statement of Undisputed Facts

Plaintiff states that he is a Sunni Muslim. While an inmate at LCI, Plaintiff filed a demand for Halal meat, stating that it was a basic tenet of his religion. ODRC has adopted policies and procedures for accommodating inmate requests for special religious diets. ODRC policy 309.01 governed the provision of religious meals to inmates. The policy provides that ODRC will provide religious meals to inmates after it is determined that (1) the meal is prescribed as a basic tenet by a faith group, and (2) that the inmate is a valid member of that faith group and is recognized by the faith group. If those determinations are made in favor of the inmate, then the request must be evaluated from a security and budgetary perspective by the warden, including consideration of any potential disruptive effect on prison discipline and administrative burdens in providing the requested meal or behavior.

The policy defines a "faith group" as an "organized religious group that represents a religious classification as defined by its academic teachings and study of comparative religions." The ODRC recognizes the Protestant Christian, Catholic, Jewish, and Islamic faiths as faith groups. The Islamic faith is regarded as a single faith group, although policy 309.06 notes that there are various schools of thought within Islam, such as Sunni, al-Hanafi, American Muslim Mission, Nation of Islam, and the Moorish Science Temple of America. ODRC does not recognize or treat these various schools of thought as separate faith groups.

Consistent with this policy, ODRC offers ecumenical Islamic services which all Islamic inmates are welcome to attend but does not offer worship services for each school of thought or honor requests to provide an

---

1. Plaintiff has been transferred to Mansfield Correctional Institution.

Imam from a particular school of thought. Similarly, ODRC provides a religious diet acceptable to the Islamic faith group as a whole, which contains no pork or pork by-products, consistent with the basic tenet of Islam that pork is unclean and must be avoided. (Affidavit of Rev. Marloe H. Karlen, para. 5) ODRC does not provide Halal or ritually slaughtered meat to inmates, although it offers a meat-alternative diet in which nutritionally adequate meat substitutes are provided. According to ODRC policy, while some Islamic practitioners believe that they are forbidden to consume meat that is not Halal, a prohibition against non-Halal meat is not a basic tenet of the Islamic faith. (Karlen Aff., para. 5) Imams providing services to ODRC and its Religious Services Department have consistently advised ODRC that an Islamic inmate need only pray over meat and it will be Halal. (Karlen Aff., para. 5; see also Answers of Imam Wali Fard to Plaintiff's Interrogatories, Nos. 17, 18, 19; Answers to Request for Admissions, Nos. 4, 6)

Plaintiff states, without support or confirmation, that Halal meat is available in Ohio. Defendants assert that pursuant to their informational search, there is no Ohio supplier of Halal meat capable of supplying the needs of Ohio's 29 correctional institutions. The only Ohio suppliers located by ODRC are small specialty grocery stores. Accordingly, since no suitable supplier is known, ODRC has not made any determination as to the possible cost of supplying such meat. (Karlen Aff., para. 6)

ODRC provides kosher meals to Orthodox and Conservative Jewish inmates who request it and are able to satisfactorily document religious necessity. The number of inmates demonstrating a need for such meals is small and ODRC is able to meet the demand for kosher food for those few inmates at reasonable cost from outside suppliers. (Karlen Aff., para. 7)

### Standard of Review for Magistrate Judge's Report and Recommendation

The applicable district court standard of review for a magistrate judge's Report and Recommendation depends upon whether objections were made to that Report. When objections are made to a Report and Recom-

mendation of a magistrate judge, the district court reviews the case *de novo*. FED. R.CIV.P. 72(b) provides this standard of review; it states, in pertinent part, the following:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Accordingly, this Court will review the Reports and Recommendations, to which timely objections have been filed, *de novo*. *See Massey v. City Ferndale*, 7 F.3d 506 (6th Cir.1993).

### Summary Judgment Standard

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), *see also*

*U.S. v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

■ Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson,* at 248–49, 106 S.Ct. at 2510–11, 91 L.Ed.2d 202 (1986). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149 (6th Cir.1995). The text of FRCP 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate.

■ Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that, "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. U.S.,* 20 F.3d 222 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988)). Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley,* at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. at 2510–11. The judge's sole function is to determine whether there is a genuine factual issue for

trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

### Law and Analysis

#### I. Free Exercise Claim [2]

■ As the Magistrate Judge correctly stated, inmates retain the First Amendment right to exercise their religion subject to reasonable restrictions and limitations. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972); *Bell v. Wolfish,* 441 U.S. 520, 549–51, 99 S.Ct. 1861, 1879–81, 60 L.Ed.2d 447 (1979). Further, the Magistrate Judge correctly set forth a two step test for analyzing Plaintiff's free exercise claim. The first inquiry is to determine whether Defendants' policies deprive Plaintiff of the right to express his religion. More specifically, the Court must evaluate the "quality of the claims" alleged to be religious. *See Wisconsin v. Yoder,* 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972). To be protected by the Constitution, the particular religious ritual must be central or indispensable to the inmate's religious observances and must be a conviction shared by an organized group as opposed to a personal preference. *Sequoyah v. T.V.A.,* 620 F.2d 1159, 1164 (6th Cir.1980), *cert. denied,* 449 U.S. 953, 101 S.Ct. 357, 66 L.Ed.2d 216 (1980). If the tenet is not "fundamental," summary judgment is appropriate. *See Abdur-Rahman v. Michigan Dept. of Corrections,* 65 F.3d 489, 492 (6th Cir.1995).

■ If the failure to provide Halal meat is found to be a substantial burden on a central tenet of Plaintiff's religion, then the Court must determine whether the institutions's failure to provide such meat "is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *see also O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The Magistrate Judge determined that there was a genuine issue of material fact regarding whether eating Halal meat is a fundamental tenet of Islam. Specifically, the Magistrate Judge noted that Defendants' policies recognizing that some Muslims believe they should only eat Halal meat, and the fact that the prison serves an alternate diet with meat substitutes reflects that the tenet is fundamental. The Magistrate Judge also noted that the opinion of Imam Fard arguably proves the opposite conclusion. (Report & Recommendation at p. 9)

The Court disagrees. The Defendants' policies are clear. The policy recognizes that the prohibition **against eating pork or pork by-products** is a fundamental tenet of Islam and thus provides pork free diets for all Muslims. ODRC policy recognizes that while some Islamic practitioners believe that they are forbidden to consume meat that is not Halal, a prohibition against non-Halal meat **is not a basic tenet for all Muslims.** (Karlen Aff. para. 5) Further, ODRC policy applies to **faith groups**—like the over 900 Protestant denominations or the different schools of Buddhism, the Sunni school of thought within Islam is not considered a separate faith group. Consistent with that policy, ODRC does not offer separate congregant services to various schools of thought within faith groups, nor does it honor demands from various schools to provide an Imam, minister or other official from a particular school. Thus, Defendants treated

---

2. Plaintiff does not allege violations under the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb–2000bb–4 ("RFRA"). Since he did not cite RFRA, his claim must be considered under the "reasonableness" standard set forth in *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). This standard "continues to have vitality for

claims brought directly under the First Amendment...." *Jolly v. Coughlin,* 76 F.3d 468, 475 (2d Cir.1996). In any event, on June 25, 1997, the Supreme Court struck down the RFRA as unconstitutional. *City of Boerne v. P.F. Flores, Archbishop of San Antonio,* —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

Plaintiff's demand for Halal meat as a statement of preference to his own particular school of thought. As Defendants' correctly note, Plaintiff has failed to show that *Halal* is a fundamental tenet for each member of the Islamic faith. Moreover, Plaintiff has been given an alternative means of exercising his faith, without eating non-Halal meat. The prison has provided "nutritionally adequate alternatives" anytime a meat entree is offered to accommodate the various Muslim beliefs. The Defendants' accommodation of Plaintiff's religious needs is reasonable and constitutionally adequate, and thus, Plaintiff's exercise of his religion has not been substantially burdened.[3] *See Salaam v. Collins,* 830 F.Supp. 853, 855 (D.Md.1993).

Having determined that there is no substantial burden on a central tenet of Plaintiff's religion, the Court need not address the second step of the inquiry, i.e., whether the Defendants' failure to provide Halal meat is reasonably related to legitimate penological interests. Nevertheless, the Court has reviewed the Magistrate's Report in which the Magistrate Judge determined that Defendants' had not proven that its policy was reasonably related to legitimate penological interests and has determined that Defendants have satisfied the four factor test set forth in *Turner,* and therefore, its policy not to provide Halal meat is reasonably related to a legitimate penological interest.

■ The four factors a court should consider when determining whether a regulation is reasonable are: (1) whether there is a valid rational connection between the regulation and a legitimate and neutral government interest put forward to justify the regulation; (2) whether there are alternate means of exercising the asserted right that remain open to inmates; (3) the impact accommodating the asserted right will have on guards, other inmates, and the allocation of prison resources; and (4) the absence of ready alternatives. *Turner,* 482 U.S. at 89–90, 107 S.Ct. at 2261–62.

■ With respect to the first factor, the Magistrate Judge noted that Defendants put forth no proof of economic or other considerations that may justify its policy regarding Halal meat. On the contrary, the obvious basis for the Defendants' policy of recognizing faith groups, as opposed to every sect within a faith group, illustrates its understanding of the impossibility and the tremendous burden it would be to try to accommodate each and every unique request from each sect. Rather, the prison has rationally decided to accommodate the fundamental tenets recognized by all members of faith groups, things which are common to all sects within a faith group.

The Magistrate Judge correctly determined that Defendants met the second factor by providing an alternate means for Plaintiff to exercise his religion. As to the third factor, the Magistrate determined that Defendants submitted no evidence regarding the impact that supplying Halal meat will have on guards, other inmates and the allocation of prison resources While it is true that Defendants have not submitted any studies or statistical analysis on the issue, such a showing is not required. Defendants contend that they are concerned that providing a special diet to one subset of a faith group could lead to a barrage of similar requests from other inmates. This reasoning was given deference by the Court in *Salaam v. Collins,* 830 F.Supp. 853 (D.Md.1993), *aff'd,* 70 F.3d 1261 (4th Cir.1995) (unpublished). In that case the issue of not supplying Halal meat was brought against the Maryland prison system. Application of the *Turner* factors resulted in the finding that the Plaintiffs were not entitled to relief.

Finally, the Magistrate Judge determined that the Defendants did not meet the fourth factor, the absence of ready alternatives, because they did not submit evidence on whether an out of state supplier of Halal meat would be unsuitable if available. Again, such evidence is unnecessary. Defendants submitted evidence that Imam Fard was unaware of a supplier in the Cleveland, Ohio area and the affidavit of Rev. Karlen states that ODRC's informational research has revealed no supplier of Halal meat capable of

---

**3.** Plaintiff asserts that Defendants' policy requires him to be a vegetarian, which also violates his religion. Plaintiff has offered no evidence to support his claim that eating a vegetarian diet violates a basic and fundamental tenet of his religion.

supplying the needs of Ohio's 29 correctional institutions. Since no suitable Ohio suppliers were found, ODRC has not made any determination as to the possible cost of supplying such meat. (Karlen Aff., para. 6) This evidence demonstrates that no ready source of Halal meat is available. As the Supreme Court noted in *Turner*:

> ∴ the absence of ready alternatives is evidence of the reasonableness of a prison regulation.... This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint.

*Turner*, 482 U.S. at 90–91, 107 S.Ct. at 2262.

Accordingly, Defendants have satisfied the four factors set forth in *Turner*, thus, demonstrating that the prison's policy not to provide Halal is reasonably related to legitimate penological interests.

## II. Equal Protection Violation

■ Plaintiff contends that he was denied equal protection of the law because Jewish inmates receive kosher food pursuant to their religious principles, while Sunni Muslims do not receive Halal meat. Plaintiff has submitted the affidavit of one inmate who states that he is an Hasidic Jew who receives kosher meals.

The Magistrate Judge correctly stated that to prevail, Plaintiff must prove that a discriminatory purpose was a motivating factor in the decision not to provide Halal meat to Plaintiff and that Defendants failed to satisfy the *Turner* reasonable relationship test. *Salaam*, 830 F.Supp. at 859. The Magistrate Judge determined that discriminatory intent could be inferred from the lack of evidence that a kosher diet is more fundamental to certain Jews than a Halal diet is to certain Muslims and from the fact that Defendants have not submitted evidence setting forth the motivating factor or factors that led to the ODRC policy.

In response, the Defendants support their policy of not providing Halal meat, in part, by the fact that the number of Orthodox and Conservative Jewish inmates requesting kosher meals is small and that Ohio suppliers are available to meet the demand for kosher food for those few inmates at a reasonable cost. (Karlen Aff., para.7) Defendants also note that, unlike the situation with kosher food, there is no Ohio supplier of Halal meat available to meet the demand for Halal meat at all Ohio correctional institutions. Thus, such food is physically unavailable. In response to Defendants' statement that Halal meat is unavailable, Plaintiff simply makes an assertion, without support, that Halal meat is available. Plaintiff's unsupported, conclusory statement does not create an issue of fact necessary to defeat summary judgment. *See Cox, supra*, 53 F.3d at 149; *Celotex, supra*, 477 U.S. at 322, 106 S.Ct. at 2552. Thus, rather than inferring discriminatory purpose from the Defendants' failure to provide Halal meat, it is more likely from the evidence submitted that Defendants were simply unable, as opposed to unwilling, to provide Halal meat. Moreover, even if a discriminatory purpose were inferred, the Defendants meet the Turner reasonable relationship test. Accordingly, Plaintiff cannot prevail on his equal protection claim.

### Conclusion

For the reasons stated herein, the Report and Recommendation (Document # 30) of the Magistrate Judge is NOT ADOPTED, the Plaintiff's Motion for Summary Judgment (Document # 25) is DENIED, and Defendants' Motion for Summary Judgment (Document # 23) is GRANTED.

IT IS SO ORDERED.

### JUDGMENT ENTRY

Pursuant to the Memorandum of Opinion and Order of this Court, the Report and Recommendation of the Magistrate Judge (Document # 30) is NOT ADOPTED, the Plaintiff's Motion for Summary Judgment (Document # 25) is DENIED, and the Defendants' Motion for Summary Judgment (Document # 23) is GRANTED.

IT IS SO ORDERED.