**Omar Ameer SAUNDERS–EL, Plaintiff,**

v.

**James TSOULOS, et al., Defendants.**

No. 96 C 915.

United States District Court,
N.D. Illinois,
Eastern Division.

March 25, 1998.

Omar Ameer Saunders-El, Pontiac, IL, pro se.

Angela Coumas, Attorney General's Office, Chicago, IL, Susan Takata O'Leary, Illinois Dept. of Corrections, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

Plaintiff Omar Ameer Saunders-El, an inmate currently incarcerated at Stateville Correctional Center, filed this *pro se* suit under 42 U.S.C. § 1983 for violation of his right to participate in religious services. Saunders-El claims that Senior Chaplain James Tsoulos, Grievance Officer Debra Wil-

son, and Warden Keith Cooper denied him participation in Ramadan, a religious fast, while he was incarcerated at Joliet Correctional Center. Pursuant to this court's order of March 17, 1997, only Saunders-El's First Amendment free exercise claim for damages against Defendants in their individual capacities remains alive.[1] (Order, March 17, 1997, pp. 3–4.) Defendants filed a motion for summary judgment and 12(m) statement, and Saunders-El filed a response. For the reasons that follow, the court grants Defendants' motion for summary judgment.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." All reasonable inferences regarding the facts must be drawn in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Where the party opposing a motion for summary judgment bears the burden of proof on an issue, he or she must affirmatively demonstrate by specific factual allegations that there is a genuine issue of material fact requiring trial. *Courtney v. Biosound,* 42 F.3d 414, 418 (7th Cir.1994). The nonmoving party's affidavit or deposition can constitute such affirmative evidence. *Id.* If the nonmoving party fails to establish the existence of an element essential to his case on which he bears the burden of proof, summary judgment is proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## BACKGROUND

In January, 1996, before Ramadan was to begin, Saunders-El was required to identify

---

1. Since this court issued its March 12, 1997 order, the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, was declared unconstitutional. *City of Boerne v. P.F. Flores,* — U.S. —, —, 117 S.Ct. 2157, 2172, 138 L.Ed.2d 624 (1997). Therefore, the court dismisses Saunders-El's RFRA claim.

his religious affiliation on a prison questionnaire, which included separate boxes for "Nation of Islam," "Muslim," and "Moorish Science Temple," among other designations. (Def. 12(m) Appendix F.) The form asks the inmate to indicate "one designation among the selections below." (Def. 12(m) Appendix F.) Saunders–El claims that he checked the box for the Moorish Science Temple of America ("MSTA") since he was required to choose only one affiliation, but that MSTA members also follow the religion of Islam. (Saunders–El Aff.[2] ¶ 8.)[2] Saunders–El asserts that before Ramadan was to begin, he informed Chaplain Tsoulos that Islam is the MSTA's religion. (Saunders–El Aff.[1] ¶¶ 11, 16.)

Chaplain Tsoulos initially told Saunders–El that he would include him on the list of inmates wishing to observe Ramadan. (Saunders–El Aff.[1] ¶ 11.) However, Chaplain Tsoulos removed Saunders–El's name from the Ramadan list after consulting with Clifford Warner–Bey (Def. 12(m) ¶ 34), Grand Governor of Illinois' Institutional Missions for the Moorish Science Temple of America ("MSTA") (Def. 12(m) ¶ 10). Warner–Bey is charged with ensuring that the temples in Illinois function according to MSTA principles. (Def. 12(m) ¶ 11.) The Illinois Department of Corrections recognizes Warner–Bey as an authority on the MSTA (Def. 12(m) 15), and Warner–Bey maintains that Ramadan is *not* a tenet of the MSTA and that the MSTA and Islam are distinct religions (Warner–Bey Aff. ¶¶ 5–6). Warner–Bey in fact claims that participating in Ramadan is a "violation" of MSTA practice. (Warner–Bey Aff. ¶ 6.) Furthermore, according to Chaplain Tsoulos, no MSTA member at Joliet had participated in Ramadan in the past. (Tsoulos Aff. ¶ 9.)

One observing Ramadan fasts between sunrise and sunset for one month and eats only before dawn and after dusk. When Ramadan began, Saunders–El was not escorted to the dining hall before dawn and after dusk the way other inmates observing Ramadan were escorted. (Def. 12(m) ¶ 27, 36.) While he was allowed to purchase food

from the commissary to have in his cell before sunrise and after sunset (Def. 12(m) ¶ 37), Saunders–El said that "[y]ou got to have money for that" (Saunders–El Dep., p. 42). On January 22, 1996, Saunders–El filed a grievance concerning his desire to participate in Ramadan. (Def. 12(m) ¶ 39.) A prison counselor informed Saunders–El that, according to the Chaplain, Moorish Americans do not observe Ramadan. (Def. 12(m) ¶ 40.) Grievance Officer Debra Wilson then denied Saunders–El's grievance, relying on Warner–Bey's statement that Moorish Americans do not participate in Ramadan, and Warden Keith Cooper concurred with Wilson's denial. (Def. 12(m) ¶¶ 41–43.)

Saunders–El claims that the MSTA's founder, Prophet Noble Drew Ali, teaches that Islam is the MSTA's religion (Saunders–El Aff.[1] ¶ 3) and that MSTA members should follow the Holy Koran of Mecca (Saunders–El Aff.[1] ¶¶ 20–21). According to Saunders–El, Prophet Ali is the sole recognized authority on MSTA practices and Warner–Bey is only a member of the MSTA, like Saunders–El himself. (Saunders–El Aff.[2] ¶ 3.) Saunders–El asserts that if there is a disagreement within the MSTA about what tenets to follow, the disagreement should be resolved by consulting the MSTA's Constitution. (Saunders–El Dep., p. 55.) Saunders–El does not, however, offer evidence that the MSTA Constitution commands that MSTA members observe Ramadan.

## ANALYSIS

Saunders–El must satisfy three elements to succeed in his free exercise claim: (1) that he espouses a *bona fide* religion, (2) that his beliefs are sincerely held, and (3) that the activity he wishes to perform is essential to the practice of his religion. *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Earlier, this court found that Saunders–El stated a claim under the First Amendment. (Order, March 17, 1997, p. 4.) Defendants contend that Saunders–El fails to satisfy the third element of his claim because observing Ramadan is not

2. Saunders–El's response to Defendants' motion for summary judgment consists of two affidavits attached to each other. Each affidavit contains a set of separately numbered paragraphs. The court refers to the affidavits as Aff.[1] and Aff.[2]

essential to the practice of his religion. (Def.Mem., p. 7.)

■ The motion at bar raises a theological disagreement about the essential tenets of the MSTA, Saunders–El's religious affiliation. The court notes at the outset the undesirability of judges donning religious robes over judicial ones. The courts are not equipped to resolve intra-faith differences among followers of a particular creed in relation to the Religion Clauses. *Thomas v. Review Bd. of Indiana Employment Sec. Division,* 450 U.S. 707, 715–16, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981) ("[I]t is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation.")

The parties do not dispute that Ramadan is an Islamic practice, but Defendants claim that Ramadan is not an MSTA practice. (Tsoulos Aff. ¶ 5, Warner–Bay Aff. ¶ 6.) Defendants also argue that the MSTA is a distinct religion from Islam. (Warner–Bey Aff. ¶ 5.) Conversely, Saunders–El asserts that Islam is the religion of the MSTA and that MSTA members therefore observe Ramadan. (Saunders–El Aff.[1] ¶¶ 4, 8.) Saunders–El maintains that the only feature that distinguishes the MSTA from Islam is that, in addition to teaching the divine creed of Islam, the MSTA teaches black Americans about their nationality. (Saunders–El Aff.[1] ¶ 11.)

■ While the parties' filings demonstrate a dispute about a material fact, whether Ramadan is a tenet of the MSTA, Defendants argue that the court should nonetheless grant their motion for summary judgment on qualified immunity grounds. Defendants contend that they are entitled to qualified immunity because there is no clearly established right for MSTA members to participate in Ramadan at Joliet. Qualified immunity is available to shield government officials who are performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Recognizing that the question of the level of generality at which the relevant "legal right" is to be identified is often dispositive, the Supreme Court cautioned against imposing an unrealistic burden on public officials in *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ A right is clearly established when its contours are sufficiently clear so that a reasonable official would realize that what he is doing violates that right. *Anderson,* 483 U.S. at 640. This does not mean that there has to be a case on point holding that the officials' exact conduct is illegal before the court will find the officials liable; however, "in the light of preexisting law the unlawfulness must be apparent." *Gossmeyer v. McDonald,* 128 F.3d 481, 495 (7th Cir.1997) (citations omitted). This requires the plaintiff to point to either a closely analogous case or evidence that the defendants' conduct is so violative of the constitutional right that reasonable officials would know that their conduct was unconstitutional without guidance from courts. *Id.* at 495–96.

■ While it is well-established that prisoners have the right to freely exercise their religious beliefs, *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), the issue here is whether it was well-established that MSTA members at Joliet have a right to observe Ramadan. Saunders–El identifies no analogous cases or evidence to show that Defendants would have known that their actions violated a constitutional right; he merely asserts that he notified Chaplain Tsoulos about his opinion on the relationship between the MSTA and Islam. Indeed, the court can find no case law indicating that Ramadan is an essential tenet of the MSTA. Defendants relied on the opinion of Warner–Bey, a recognized official of the MSTA, in concluding that MSTA members do not observe Ramadan. Furthermore, no MSTA members at Joliet had participated in Ramadan before Saunders–El made his request. Saunders–El's interpretation of MSTA practices is insufficient to es-

tablish that his right to participate in Ramadan was clearly established.

The court additionally notes that a survey of the case law shows that the relationship between the MSTA and Islam is difficult to define. *See generally, Johnson–Bey v. Lane,* 863 F.2d 1308, 1309 (7th Cir.1988) (MSTA is an "Islamic sect"); *Scott v. Horn,* No. Civ.A. 97–1448, 1998 WL 57671, *1 (E.D.Pa. Feb.9, 1998) (the following are considered "Islamic-related" groups in Pennsylvania's prisons: the Nation of Islam, Muhammad's Temple of Islam, the Moorish Science Temple of America, and the Ahmadiyyah Movement); *Abdullah v. Fard,* 974 F.Supp. 1112, 1114 (N.D.Ohio 1997) (The Ohio Department of Rehabilitation and Corrections regards the Islamic faith as a single faith group consisting of various schools of thought within Islam, such as Sunni, al-Hanafi, American Muslim Mission, Nation of Islam, and the Moorish Science Temple of America. The ODRC does not recognize or treat those various schools of thought as separate faith groups.); *Crosley–El v. Berge,* 896 F.Supp. 885 (E.D.Wis.1995) (Fox Lake Correctional Institution does not distinguish within Islam between Muslims and Moors, and it provides what it calls a general "Muslim" service for all Islamic inmates.) Those cases reveal that some prisons treat the MSTA as an Islamic sect. However, even if there is wide agreement that the MSTA is related to Islam, what remains unclear is the extent to which the MSTA follows Islamic tenets. More specifically, the cases fail to clarify whether Ramadan is a tenet of the MSTA. The court cannot conclude, therefore, that Saunders–El's right to observe Ramadan was clearly established at the time that Defendants denied him the opportunity to participate in the fast.

## CONCLUSION

For the foregoing reasons, the court grants Defendants' motion for summary judgment on the basis of qualified immunity. The case is dismissed in its entirety.