**J. BLAIR–BEY; Duane Wright–Bey; Michael Taylor–El, Appellees,**

v.

**Crispus NIX, Appellant.**

**No. 91–3397.**

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1992.

Decided April 27, 1992.

Rehearing and Rehearing En Banc Denied June 15, 1992.

FAGG, Circuit Judge.

Iowa State Penitentiary inmates James Blair–Bey, Duane Wright–Bey, and Michael Taylor–El (the prisoners) brought this 42 U.S.C. § 1983 action contending the penitentiary's policy of providing only a single Islamic religious advisor violates their First Amendment right to exercise freely their religious beliefs. Following a hearing, the district court ordered the penitentiary to hire a part-time religious advisor to serve the prisoners' particular Islamic sect. Crispus Nix, the penitentiary's warden, appeals the district court's order. We reverse.

The prisoners are members of the Moorish Science Temple (MST), which is an Islamic sect. The penitentiary employs Catholic, Protestant, Jewish, Islamic, and Native American representatives to advise inmates belonging to those religions. The penitentiary does not employ separate representatives to advise individual sects within the designated religions. For example, the Islamic representative advises the prisoners belonging to the Islamic sects in the penitentiary.

The prisoners contend they are entitled to their own MST advisor separate from the Islamic advisor already provided. Although the prisoners express dissatisfaction with the current Islamic advisor, they are not seeking to replace him in this lawsuit. Instead, in their complaint, the prisoners seek a court order requiring the penitentiary to hire a separate Islamic advisor. Specifically, the prisoners request "a Moorish representative from the founding Grand Temple." The prisoners are not entitled to this relief.

The Constitution does not require that a religious advisor be provided for every sect represented in a penitentiary. *See Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1081 n. 2, 31 L.Ed.2d 263 (1972) (per curiam); *Tisdale v. Dobbs,* 807 F.2d 734, 740 (8th Cir.1986). Nor does the Constitution require that prisoners be provided the religious advisor of their choice or one that belongs to their individual religious sect. *Reimers v. Oregon,* 863 F.2d 630, 632 (9th Cir.1988). *See SapaNajin v. Gunter,* 857 F.2d 463, 465 (8th Cir.1988) (noting

William A. Hill, Asst. Atty. Gen., Des Moines, Iowa, for appellant.

Paul C. Thune, Des Moines, Iowa, for appellees.

Before FAGG, Circuit Judge, LAY, Senior Circuit Judge, and HANSEN, Circuit Judge.

"each inmate is not entitled to his own personal clergyman"). Rather, prisoners must simply be given a reasonable opportunity to exercise their religious freedom guaranteed by the First and Fourteenth Amendments. *Cruz*, 405 U.S. at 322 n. 2, 92 S.Ct. at 1081 n. 2; *Tisdale*, 807 F.2d at 740.

■ Although the prisoners characterize the MST sect as an orthodox Islamic sect, Appellee's Brief at 6, the prisoners contend the MST sect is sufficiently different from other Islamic sects to warrant their own MST advisor. To support their contention, the prisoners cite *SapaNajin*. In *SapaNajin*, we held unconstitutional a penitentiary's policy of hiring a medicine man from an aberrant Native American sect whose religious beliefs and practices were diametrically opposed to those of the Native American inmates he advised. 857 F.2d at 464–65.

A review of the record shows this case is not like *SapaNajin*. Although the district court found the MST's tenets differ from other Islamic sects—and noted the current Islamic advisor does not believe or follow all the MST's practices—the district court did not find the advisor deficient in his understanding of the MST's tenets, incapable of ministering to the MST inmates, or unwilling to do so because of his personal skepticism about the MST sect. It is apparent to us the district court's sparse findings about the advisor do not support the court's conclusion that the advisor's efforts may "undermine [the prisoner's] efforts to practice their religion with the same freedoms that other derivative sects of other major religious groups at [the penitentiary] enjoy." Indeed, the record shows the current advisor is an authority on the Islamic religion; he is qualified by education and experience to serve all the Islamic inmates at the penitentiary; and he understands the nuances of the MST sect. Moreover, the advisor testified he has ministered to MST inmates in the past and has never encountered a problem or received a complaint. Thus, this case simply does not involve the situation present in *SapaNajin*.

In sum, we conclude the penitentiary's policy of providing a single Islamic advisor does not unreasonably impinge on the MST inmates' ability to practice their religion. Although the Islamic advisor may not be the religious leader the prisoners prefer, his employment by the prison does not interfere with the MST inmates' ability to exercise freely their religious beliefs. The MST inmates enjoy the same religious freedoms as the other inmates. The penitentiary permits the MST inmates to pray and worship together, receive and read MST literature, possess religious artifacts, receive MST advisors as visitors, and otherwise follow their religious beliefs within the bounds of the penitentiary's operating rules. We thus conclude the prisoners have failed to establish a violation of their First Amendment right to exercise their religious beliefs. *See Johnson v. Moore*, 948 F.2d 517, 520 (9th Cir.1991) (per curiam).

Accordingly, we reverse.

HANSEN, Circuit Judge, concurring.

I wholeheartedly concur in the court's opinion. The Free Exercise Clause of the First Amendment, applicable to the states through the Fourteenth Amendment, does not require the penitentiary to hire a separate MST advisor as requested by the MST inmates. As discussed in the last paragraph of the court's opinion, the MST inmates have the ability to freely exercise their religious beliefs. The Free Exercise Clause does not require the penitentiary to make further "special accommodations" for the MST inmates' religious beliefs, nor does it require the prison authorities to provide for the proper education of the MST inmates in their religion as the district court seems to hold. I write separately, however, only to emphasize that at oral argument the MST inmates acknowledged that they do not raise a claim under the Equal Protection Clause of the Fourteenth Amendment. Some of the language from the magistrate judge's report and recommendation quoted in the dissent suggests an equal protection analysis. Whether or not the MST inmates have an opportunity to "practice their religion with the same

freedoms that other derivative sects of other major religious groups at ISP enjoy," *Blair–Bey v. Nix*, No. 4–87–CV–70478, slip op. at 6 (S.D.Iowa July 9, 1991) (magistrate judge's report and recommendation), is simply not before us.

LAY, Senior Circuit Judge, dissenting.

I respectfully dissent.

After hearing oral arguments in this case, I tentatively agreed with the majority's view that accommodation of the MST followers could be rendered by the Imam who ISP now hires as a part-time consultant to provide religious guidance for the Islamic religion. However, upon further study of the record and the magistrate judge's findings of fact, as approved by the district court, I am persuaded that the Imam is not qualified to provide the MST followers sufficient guidance within the requirements of the first amendment. If it were not for the magistrate judge's findings of fact, I could agree with the majority. However, the record must be examined in light of the facts and the result we reach must be based upon the findings of fact. It is axiomatic that we must adhere to the magistrate judge's findings of fact unless they are clearly erroneous. There is nothing in the record to demonstrate that the findings of fact made in the present case are clearly erroneous. In order to agree with the majority's conclusion I would have to substitute my own findings from the record and ignore those of the district court. Proper deference to the clearly erroneous rule precludes me from doing this.

In the present case the magistrate found as follows:

> However, testimony by an MST expert indicated that the MST religious beliefs and practices *radically deviate* from those of the traditional followers of Islam in both *form* and *substance*. They *do not share* a common prophet, common prayer books, common holidays, common prayers or prayer modes.

> Indeed, during the evidentiary hearing, the Imam candidly acknowledged that he *does not believe that MST is a religion*

*at all* and, after having authored a paper on the subject, he believed that MST is a social movement. He also stated that MST is an extremist group and that he tries to teach the MST followers the basic tenets of Islam "to help to keep them properly focused."

> Therefore, as a practical matter, Plaintiffs' ability to exercise their religious beliefs are limited to prayer, reading of the available MST literature, possessing religious artifacts to the extent other inmates may do so, and otherwise living their lives in conformity with their religious beliefs to the extent consistent with prison rules. In short, *no special accommodations are made* for the *Plaintiffs' religious beliefs* and no avenue exists by which they can be *properly educated* in their religion. [The need for religious education was demonstrated through the testimony of Plaintiffs which indicated inconsistent understandings or misunderstandings of the history and practices of MST. The testimony of the MST expert helped to clarify the tenets of MST for the court as well as the Plaintiffs.]

> *Further, the teachings of the Imam appear to conflict so significantly with those teachings of MST that the Imam's efforts may well undermine Plaintiffs' efforts to practice their religion with the same freedoms that other derivative sects of other major religious groups at ISP enjoy.*

*Blair–Bey v. Nix*, No. 8–87–CV–70478 (S.D.Iowa July 9, 1991) (Magistrate's Report and Recommendation) (emphasis added).

Based upon these findings, it seems to me that the majority's decision directly contradicts *SapaNajin v. Gunter*, 857 F.2d 463 (8th Cir.1988).[1]

On this basis, I respectfully dissent.

---

**1.** In *SapaNajin*, in an opinion authored by now Chief Judge Arnold, the court held that where a

district court found "sizeable differences in religious practices," a Nebraska state prisoner was entitled to relief on the ground that the inmate's first amendment rights were abridged. As here, *SapaNajin* did not involve an equal protection challenge. Although, I agree that each inmate is not entitled to his own personal religious advisor, it seems to me that if *SapaNajin* has any value or meaning as a precedent under Eighth Circuit law, then we are bound to provide the same relief as in *SapaNajin*. There, this court held "The [district] Court's solution of rotating a variety of different medicine men through the prison seems fair and calculated to meet the needs of the maximum number of inmates. It also has the advantage of being simple and no more expensive than the Department's former practice." 857 F.2d at 465. Under the circumstances of this case, based upon the findings of fact of the district court, the same relief should be afforded.