896 F.Supp. 885 (1995)
Sylvania B. CROSLEY-EL, Plaintiff,
v.
Gerald A. BERGE, Defendants.
No. 94-C-1363.
United States District Court, E.D. Wisconsin.
August 24, 1995.
Sylvania B. Crosley-El, Fox Lake, WI, plaintiff pro se.
Stephen J. Nicks, Assistant Attorney General, State of Wis., Department of Justice, Madison, WI, for defendant.

DECISION AND ORDER
RANDA, District Judge.
This matter comes before the Court on the parties' cross-motions for summary judgment.[1] For the following reasons, plaintiff's motion is denied and defendant's motion is granted, thereby dismissing the case.

FACTS
The material facts are few and undisputed. The plaintiff, Sylvania B. Crosley-El ("Crosley"), is incarcerated at Fox Lake Correctional Institution ("FLCI") in Fox Lake, Wisconsin. Crosley is a member of the Moorish Science Temple of America ("the Moorish"), a religious sect within Islam. FLCI provides separate group religious services for five sectarian groups: Catholic, Protestant, Jehovah's Witness, Muslim and Native American. FLCI does not distinguish within Islam between Muslims and Moors (or "Moslems", the term used by Crosley) and does not provide separate group services for members of the Moorish faith. Instead, FLCI provides what it calls a general "Muslim" service for all Islamic inmates. There is no indication in the record as to what this service consists of or as to how it may, or may not, differ from a Moorish service. Nonetheless, Crosley states that attending the general *886 "Muslim" service is forbidden by his Moorish religion and brings suit, under the Religious Freedom Restoration Act ("RFRA"), to force FLCI to provide separate Moorish services.

LAW

I. SUMMARY JUDGMENT STANDARDS
Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."
Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
Summary judgment is no longer a disfavored remedy. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed `to secure the just, speedy and inexpensive determination of every action.'" Id., at 327, 106 S.Ct. at 2555. It "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." United Food and Commercial Workers Union Local No. 88 v. Middendorf Meat Co., 794 F.Supp. 328, 330 (E.D.Mo.1992). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). While a material fact is one that is "outcome determinative under the governing law", Whetstine v. Gates Rubber Co., 895 F.2d 388, 392 (7th Cir.1990), a genuine issue as to that material fact is raised only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. at 2510.
The question whether a material issue of fact is genuine necessarily requires "some quantitative determination of sufficiency of the evidence." Childress, A New Era for Summary Judgments: Recent Shifts at the Supreme Court, 116 F.R.D. 183, 186 (1987). "Of course, a court still cannot resolve factual disputes that could go to a jury at trial, ... [b]ut no longer need the trial court leave every sufficiency issue for trial or a later directed verdict motion." Id. Rather, the standard for summary judgment is now the same as that for a directed verdict: "[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52, 106 S.Ct. at 2512. "A district judge faced with [a summary judgment motion] must decide, subject of course to plenary appellate review, whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed." Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572-73 (7th Cir.1989) (citations omitted). Thus, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[A] party must produce `specific facts showing that there remains a genuine issue for trial' and evidence `significantly probative' as to any [material] fact claimed to be disputed." Branson v. Price River Coal Company, 853 F.2d 768, 771-72 (10th Cir.1988). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2511. Thus, "[a] party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture. `Supporting and opposing affidavits shall be made on personal knowledge,....'" *887 Palucki, 879 F.2d at 1572. Such principles insure that summary judgment is utilized "when it can be shown that a trial would serve no useful purpose." Windham v. Wyeth Laboratories, Inc., 786 F.Supp. 607, 610 (S.D.Miss.1992).

II. THE RFRA
The RFRA provides as follows:
Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person 
(1) is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest.
42 U.S.C. § 2000bb-1.
Though the RFRA intended to restore the "compelling interest/least restrictive means" test for some First Amendment issues, "[t]his is not to say that all regulation of religious activity or expression must be supported by a compelling state interest." Werner v. McCotter, 49 F.3d 1476, 1480 (10th Cir.1995). Rather, "[t]he threshold inquiry under RFRA is whether the statute [or conduct] in question substantially burdens a person's religious practice. If there is no substantial burden, RFRA does not apply." Morris v. Midway Southern Baptist Church, 183 B.R. 239, 251 (Bkrtcy.D.Kan.1995) (emphasis supplied). A "substantial burden" has been defined in several different ways:
the religious adherent ... has the obligation to prove that a governmental [action] burdens the adherent's practice of his or her religion ... by preventing him or her from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.

Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995) (emphasis supplied), quoting Graham v. C.I.R., 822 F.2d 844, 850-51 (9th Cir.1987); see also, Morris, 183 B.R. at 251.
To exceed the "substantial burden" threshold, government regulation must significantly inhibit or constrain conduct or expression that manifests some central tenet of a prisoner's individual beliefs, ...; must meaningfully curtail a prisoner's ability to express adherence to his or her faith; or must deny a prisoner reasonable opportunities to engage in those activities that are fundamental to a prisoner's religion.

Werner, 49 F.3d at 1480. (Citations omitted; emphasis supplied.)
To be a "substantial burden", the government must either compel a person do something in contravention of their religious beliefs or require them to refrain from doing something required by their religious beliefs.
Morris, 183 B.R. at 251.
A "substantial burden" has been defined thusly: "where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists."
Woods v. Evatt, 876 F.Supp. 756, 762 (D.S.C. 1995) (citations omitted).
At summary judgment, Crosley has the burden of establishing a genuine issue of material fact as to whether FLCI has placed a "substantial burden" on the exercise of his Moorish religion. Werner, 49 F.3d at 1480, fn. 2. In answering this question, the Court is guided by the 9th Circuit's recent disposition of a similar claim in Bryant v. Gomez, 46 F.3d 948 (9th Cir.1995). In Bryant, a Pentecostal inmate sought to force a prison, under RFRA, to provide Pentecostal services, rather than merely providing a general "interfaith" Christian service for Christians of all denominations. The 9th Circuit affirmed a summary judgment order dismissing the case, holding that the plaintiff failed to submit evidence that the refusal to provide Pentecostal services precluded him from engaging in certain practices or instruments "mandated" by his faith:

*888 Even under the more stringent "substantial burden" test, Bryant's § 1983 claim fails, because Bryant has not provided any facts to show that the activities which he wishes to engage in are mandated by the Pentecostal religion....
* * * * * *
Bryant argues that the defendants have violated his religious rights, because their refusal to hold full Pentecostal services precludes him from participating in the practices and using the "traditional instruments" which are specific to his faith and distinct from other Protestant faiths. However, while certain practices and instruments might be unique to the Pentecostal faith, Bryant has not argued or provided evidence to show that they are mandated by his faith.
Id. at 949. Crosley's showing on summary judgment is even less than the plaintiff's in Bryant. While the Bryant plaintiff at least identified specific "practices and instruments" of his religion which the inter-faith service did not accommodate or provide, Crosley fails to identify any such practice or instrument of the Moorish religion which the general Muslim service does not accommodate or provide. Moreover, even if he had identified such practices or instruments, he has made no showing that the same are "mandated" by the Moorish religion or are a "central tenet" of the Moorish faith. Thus, under Bryant, Crosley has failed to establish a "substantial burden" upon the exercise of his religion.
The Court is also guided by the 8th Circuit's decision in Blair-Bey v. Nix, 963 F.2d 162 (8th Cir.1992), a case decided before RFRA was enacted.[2] In Blair-Bey, the plaintiffs were Moorish prisoners who were demanding that the prison provide a Moorish minister or cleric to advise them in matters of the faith. The prison provided a general "Islamic" cleric for these purposes, as well as Catholic, Protestant, Jewish and Native American clerics, but did not provide a cleric specific to the Moorish faith. The 8th Circuit found that the failure to provide a Moorish cleric did not violate the plaintiffs' first Amendment rights because, although Moorish tenets differ from those of other Islamic sects, there was no evidence that the Islamic cleric at issue could not minister to Moorish prisoners, or that Moorish prisoners could not adequately carry out their religion absent a Moorish minister:
Although the district court found the MST's tenets differ from other Islamic sects  and noted the current Islamic advisor does not believe or follow all the MST's practices  the district court did not find the advisor deficient in his understanding of the MST's tenets, incapable of ministering to the MST inmates, or unwilling to do so because of his personal skepticism about the MST sect. It is apparent to us the district court's sparse findings about the advisor do not support the court's conclusion that the advisor's efforts may "undermine [the prisoner's] efforts to practice their religion with the same freedoms that other derivative sects of other major religious groups at [the penitentiary] enjoy." Indeed, the record shows the current advisor is an authority on the Islamic religion; he is qualified by education and experience to serve all the Islamic inmates at the penitentiary; and he understands the nuances of the MST sect....
In sum, we conclude the penitentiary's policy of providing a single Islamic advisor does not unreasonably impinge on the MST inmates' ability to practice their religion.
Blair-Bey, 963 F.2d at 164. Like the evidence regarding the Islamic minister in Blair-Bey, there is no evidence in the record before the Court here indicating that the *889 "Muslim" religious service provided by FLCI is incapable of meeting the needs of Moorish prisoners. Indeed, there is no evidence of what specifically occurs during the "Muslim" service, or even the desired "Moorish" service, from which the Court could draw a comparison. The only item that comes close to a showing in this regard is Crosley's conclusory statement that attending the FLCI "Muslim" service is prohibited by his Moorish religion. Crosley submits no evidence, however, supporting this conclusion other than his bare statement. A conclusory, unsupported, unsworn statement by the plaintiff is not sufficient to thwart summary judgment.[3]
In conclusion, Crosley fails to provide any specific evidence that he is prevented from having a religious experience "which [his] faith mandates", or that is "central to [his] religious doctrine". Moreover, he fails to provide any specific evidence that he is either being forced to do something his religion proscribes or required to refrain from doing something his religion commands. Lacking such evidence, Crosley fails to create a genuine issue of material fact as to whether or not FLCI's failure to provide Moorish religious services places a "substantial burden" upon the exercise of his Moorish faith.
NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:
1. Plaintiff's motion for appointment of counsel is denied;
2. Plaintiff's motion for summary judgment is denied; and
3. Defendant's motion for summary judgment is granted and the case dismissed.
SO ORDERED.
NOTES
[1] Plaintiff has also moved for appointment of counsel. A plaintiff in a civil suit has no constitutional or statutory right to be represented by counsel in federal court. Jackson v. County of McLean, 953 F.2d 1070, 1071 (7th Cir.1992). The Court may, however, in its discretion, appoint counsel to represent indigent parties under certain circumstances. Colbert v. Rickmon, 747 F.Supp. 518, 519-20 (W.D.Ark.1990). One of the required circumstances is that plaintiff demonstrate that he has made sufficient efforts to obtain counsel on his own. Jackson, 953 F.2d at 1071. Plaintiff has made no such showing here, and the motion is denied.
[2] Congress specifically stated in RFRA's legislative history that it "expects that the courts will look to free exercise cases decided prior to Smith for guidance in determining whether the exercise of religion has been substantially burdened." Thiry v. Carlson, 887 F.Supp. 1407, 1412 (D.Kan. 1995). Blair-Bey was decided after the Supreme Court's decision in Employment Division v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), but never cited or relied upon Smith and instead relied primarily upon pre-Smith case law. The Court considers Blair-Bey's treatment of what constitutes a "violation" or "burden" upon the free exercise of one's religion as representative of pre-Smith case law and thus within the body of case law from which Congress has directed the Court to seek guidance.
[3] This is not to suggest that such a showing could not be made. The 7th Circuit has seemingly recognized, albeit with some suspicion, the Moorish faith as a bona fide religion. Johnson-Bey v. Lane, 863 F.2d 1308, 1309 (7th Cir.1988). However, the Court must evaluate the case on the record before it, which does not contain any specifics regarding the Moorish faith or how it is burdened by the "Muslim" service at issue.