Kottmyer, J.
Introduction
Plaintiffs, Rahim Rashad, Rahim Rasheed Abubardar and Dana Charles are Muslims who are prisoners in the custody of the Department of Correction (“DOC”).[1] Defendants are Michael Maloney, Commissioner of DOC, and Peter Pepe, former superintendent of MCI-Shirley. The plaintiffs allege, inter alia, violations of the Massachusetts Civil Rights Act, G.L.c. 12, §11 etseq., and 42 U.S.C. §1983.[2]They assert that the DOC has violated their rights under the federal and state constitutions by failing to provide a diet that satisfies the requirements of their religion and by permitting inmates who are not regular members of their congregation to participate in religious services. They seek, inter alia, declaratory and injunc-tive relief.
Defendants have moved to dismiss or, in the alternative, for summary judgment. Plaintiffs have filed numerous motions for injunctive relief, a motion for judgment on the pleadings and a cross motion for summary judgment. Both parties have submitted matters outside the pleadings and, after notice to the parties in accordance with Mass.R.Civ.P. 12 (b), the Court treats the defendants’ motion as a motion to dismiss for summary judgment. For the reasons which follow, the defendants’ motion to dismiss, treated as a motion for summary judgment, is allowed in part and denied in part. The plaintiffs’ cross motion for summary judgment is allowed in part and denied in part.
Summary Judgment Record
The plaintiffs are practicing orthodox Muslims who were incarcerated at MCI-Shirley when this action was filed. Muslim chaplains or Imams provide religious services and spiritual counseling for Muslim inmates at DOC prisons. At MCI-Shirley, a medium security institution, Muslim inmates are permitted to congregate for prayer on Friday afternoons.[3] They are offered Islamic and Arabic lessons in the Mosque during the week and, while there, have an opportunity to pray. Inmates may pray in their cells at any time except during a major count and may obtain a prayer towel for this purpose.
Orthodox Muslims are prohibited from eating pork and pork by-products and any other meat that has not been ritually slaughtered, Le., meat which is not Halaal.[4] DOC provides a so-called regular menu which includes meat, but not pork or pork by-products. It *163 also provides an alternative/vegetarian diet. Jewish inmates receive prepackaged Kosher meals.
During the holy month of Ramadan, Muslims are required to fast from sunrise to sunset. Muslim inmates are escorted to breakfast by way of a special inmate move before sunrise to accommodate this requirement. They eat breakfast and pray. The conclusion of Ramadan is marked by two feasts, Eid-ul-Fit’r and Eid-ul-Adha (“the Eid feasts”). DOC provides special meals to celebrate the Eid feasts. Since October of 2001, DOC has provided Halaal meat, specifically lamb, for these feasts.
Pursuant to DOC policies, the Muslim chaplain or Imam determines in the first instance who is eligible to participate in the month-long observance of Ramadan and the Eid feasts. The names of those who are eligible are placed on a Ramadan list. The Imans have been instructed that, pursuant to DOC policy, they may not bar any inmate who seeks to participate in Ramadan and the two Eid feasts. Affidavit of Taalib Mahdee (Imam at Southeastern Correctional Institution at Bridgewater), 8; Affidavit of Shakir Mahmoud (Imam at M.C.I. Norfolk), 11; Affidavit of Al-Amin Muhammad (Imam at M.C.I. Shirley), 9.
The Imams state in their Affidavits that the number of inmates participating in Ramadan has often been double the number of inmates who participate in daily prayers and weekly Jumu’ah services. At Bridgewater, the additional inmates have been Muslims who did not regularly attend services and no participant has been disruptive. Many of those who are not regular participants drop out at some point during the month. At Norfolk, new participants have included members of the Nation of Islam,[5] as well as “Christian inmates who seek to derive spiritual benefit from fasting and praying,” inmates who are “sincerely curious,” and “some other inmates who sign up by placing their name on the Ramadan list simply to partake of the different foods which are served at the end of the month-long Ramadan fast at the two Eid feasts.” Mahmoud Aff., 6. The new participants have not disrupted services. At Shirley, in 1998 when this action was filed, most of the additional inmates were “Five Percenters,” a splinter faith from The Nation of Islam. The Five Percenters disrupted services by talking and rapping. DOC has since identified the Five Percenters a Security Threat Group and its members have gone “underground” and do not now participate in Ramadan or the EID feasts. (Muhammad Aff., 4.)
DISCUSSION
A. Applicable Law
1. First Amendment
Inmates do not forfeit all constitutional protections once incarcerated. Bell v. Wolfish, 441 U.S. 520, 545 (1979). But prisoners do not enjoy the same level of constitutional protections as ordinary citizens. An inmate’s right to the free exercise of religion “is necessarily limited by the fact of incarceration and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security.” O’Lone v. Shabazz, 107 S.Ct. (1987). To establish that a particular prison policy violates an inmate’s right to the free exercise of his religious beliefs, plaintiffs must demonstrate that the practice impinges on the exercise of their religion. Id. If the inmate establishes that the state has impinged on the exercise of his or her religion, the state must justify its actions by showing that its regulations, policies or practices are reasonably related to legitimate penological interests. Turner v. Safley, 107 S.Ct. 2254, 2261 (1987). Factors considered by the courts in determining whether a regulation, practice or policy that impinges on inmates’ constitutional rights is valid include: 1) whether there is a logical connection between the restriction and the governmental interest relied on to justify it; 2) whether alternative means of exercising the restricted right are available to inmates; 3) the impact that accommodation of the right might have on other inmates, prison personnel and on allocation of prison resources generally; and 4) whether there are ready alternatives that accommodate the prisoners’ rights at de minimis cost to valid penological interests. Turner v. Safley, supra, 107 S.Ct. at 84. The reasonableness standard ensures the ability of prison officials “to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration,” and thereby “avoids unnecessary intrusion of the judiciaiy into problems particularly ill-suited to ‘resolution by decree.’ ” O’Lone v. Estate of Shabazz, supra, 107 S.Ct. at 2404-05, quoting Procunier v. Martinez, 94 S.Ct. 1800, 1807-08 (1974).
2. Massachusetts Law
The Declaration of Rights of the Massachusetts Constitution (art. 2) guarantees the right to free exercise of religion. In cases involving the validity of restrictions on the exercise of fundamental rights by prisoners, the Supreme Judicial Court “has expressly adopted Turnefs deferential standard of review,” as well as Turnefs four-factor inquiry to determine whether the regulation reasonably relates to legitimate penological interests. Mass. Prisoners Ass’n Political Action Committee v. The Acting Governor, 435 Mass. 811, 820 (2002), citing Cacicio v. Secretary of Public Safety, 422 Mass. 769-70 (1996).[6] See Jackson v. Hogan, 388 Mass. 376 (1983).
G.L. 127, §88 provides that inmates shall not be denied the free exercise of religious beliefs in the place where they are confined, but cautions “this section shall not be construed as to impair the discipline of any such institution as far as may be needful for the good government and the safe custody of its inmates.” Regulations enacted pursuant to that statute require each facility to make reasonable efforts to establish and maintain religious activities and services for all inmates who are affiliated or wish to become affiliated with recognized religious denominations or groups. *164 103 Code Mass. Regs. §471.09(1). Recognized religious groups or denominations include, but are not limited to, Catholic, Protestant, Jewish and Muslim. Id. 471.09(3). The regulations provide that inmates whose religion places restrictions on diet will be permitted access to a special diet. Further, the regulation states that where religious holidays specify particular dietary requirements {e.g., Passover, Month of Ramadan), special arrangements should be made so that inmates will be able to adhere to their religious beliefs. Id. §471.09(5) (a) & (b). DOC’s Religious Services Handbook provides that, “if requested, inmates who identify themselves as Muslims, should be allowed to celebrate three holy times: Ramadan, Eidul Fitr, Eidul Adha” and to congregate each Friday for group prayer. (Emphasis added.)[7]
B. Halaal Meat
The plaintiffs claim that defendants have violated their free exercise rights by failing to provide a diet that includes Halaal meat. The plaintiffs have established that they have a sincere belief rooted in religion that orthodox Muslims are prohibited from eating meat that is not Halaal.[8] “Conduct motivated by sincerely held religious convictions will be recognized as the exercise of religion.” Attorney General v. Desilet, supra, 418 Mass. at 323.
The record establishes that DOC inmates, including plaintiffs, have access to a nutritionally adequate diet that is meatless. Plaintiffs claim that, as orthodox Muslims, they are not vegetarians and that being restricted to a meatless diet burdens their free exercise rights. Although plaintiffs have adduced evidence that orthodox Muslims may only eat meat that has been ritually slaughtered, they have adduced no competent evidence that a meatless diet does not comply with the-requirements of the Islamic religion.[9] Plaintiffs have submitted letters from individuals who they represent are Islamic scholars addressing the defendants’ contentions that the prohibition of non-Halaal meat is not a central tenet of the Islamic faith and that prisoners who do not have access to Halaal meat may eat non-Halaal meat after saying a prayer over it.[10] Notably none of the materials submitted by plaintiffs suggests that a meatless diet conflicts with Islamic law. See Jackson v. Commissioner of Correction, 40 Mass.App.Ct 127, 130 (1996) (Religious tenets maybe proved by expert testimony).[11]
Where plaintiffs have offered no competent evidence that the alternative/vegetarian diet is not nutritionally adequate or that a meatless diet conflicts with the dietary laws of the religion to which they adhere, defendants are entitled to summary judgment on plaintiffs’ claim that DOC’s failure to provide Halaal meat violates their rights under the First Amendment and the Massachusetts Declaration of Rights. See Kahey v. Jones, 836 F. 2d 948, 950-51 (5th Cir. 1988); Martinelli v. Duggan, 817 F.2d 1499, 1507 (11th Cir. 1987); Kahane v. Carlson, 527 F.2d 492, 496 (2d Cir. 1975); Denson v. Marshall, 59 F.3d 156, 158 (D.Mass. 1999), aff'd., 230 F.2d 1347 (1st Cir. 2000); Muhammad v. Umar, 98 F.Sup. 2d 337 (W.D.N.Y. 2000); Salaam v. Collins, 830 F.Sup. 853, 857 (D.Md. 1993).
3. Equal Protection
Plaintiffs argue, in conclusory fashion, that DOC has violated their right to equal protection by providing Kosher meals to Jewish inmates while refusing to provide Halaal meat to Muslim inmates.[12] To establish a violation of their right to equal protection, plaintiffs must adduce evidence that the decision not to provide Halaal meat to Muslims was motivated by discrimination and that the difference in treatment was not simply a reasonable effort to accommodate the requirements of two different religions. See Cruz v. Beto, 92 S.Ct. 1079 (1972). Courts considering equal protection claims have noted that while the Turner/O’Lone standard was established in the First Amendment context, it is also relevant in the assessment of equal protection claims predicated on differing treatment of groups of prisoners. “As to such claims, the reasonableness of the prison rules and policies must be examined to determine whether distinctions made between religious groups in prison are reasonably related to legitimate penological interests.” Coughlin v. Benjamin, 905 F.2d 571, 575 (2d Cir. 1990); Salaam v. Collins, 830 F.Sup. 853, 857 (D.Md. 1993), aff'd., Calhoun-El v. Robinson, 70 F.3d 1261 (4th Cir. 1995).
Where the alleged discrimination is a perceived dietary benefit provided to one religious group and denied another, an important factor to be considered in determining whether the distinction is motivated by discrimination is whether the distinction is dictated by differences in the dietary requirements of the two religions. See Abdullah v. Fard, 974 F.Sup. 1112 (N.D.Ohio 1997) (no violation of equal protection where both Muslim and Jewish inmates received nutritionally adequate meals that conformed to the requirements of their faiths). Plaintiffs have adduced no evidence that either the regular menu or the alternative/vegetarian menu complies with the dietary laws of orthodox Judaism.
Other relevant considerations in determining whether the refusal to provide Halaal meat to Muslim inmates while providing Kosher meals for Jewish inmates violates equal protection include cost and the availability of a sufficient supply from a source that does not constitute a security risk and is otherwise a reliable supplier. Prison officials have a legitimate interest in operating an efficient and cost-effective food program. Kahey v. Jones, supra, 836 F.2d at 950-51; Salaam v. Collins, supra, 830 F.Sup. at 861. See Martinelli v. Duggan, supra, 817 F. 2d at 1507. Cost is affected by the comparative number of inmates requesting each diet and the comparative cost per inmate of Kosher versus Halaal meat.
*165 Plaintiffs have made various advertisements for the sale of Halaal meat part of the record. But they have adduced no evidence as to the availability of adequate supplies of Halaal meat from reliable vendors, the number of inmates who would request Halaal meat as compared with the number receiving a Kosher diet and the comparative cost (per inmate and as a total) of providing Halaal and Kosher diets. To the extent that plaintiffs assert a claim for violation of their right to equal protection, defendants’ motion for summary judgment is allowed. Salaam v. Collins, supra, 830 F.Sup. at 859.[13]
4. Placement on Ramadan List
Plaintiffs claim that defendants have infringed their rights to free exercise by forcing them to accept inmates who are not practicing members of the Islamic religion on the Ramadan list. They seek an injunction excluding individuals who are not regular members of their masjid or congregation from participating in the month-long fast and prayer meetings in observance of Ramadan and in the Eid feasts. DOC argues that its policy that the Imams must include all inmates who ask to participate in Ramadan and the Eid feasts on the Ramadan list results from its analysis of pertinent case law and previous litigation.
There is no support for plaintiffs’ claim that eligibility to be placed on the Ramadan list should be limited to Muslims who regularly participate in services or those whose beliefs are congruent with plaintiffs in all respects. Prisons are not required to provide separate services for members of different sects within the same religion. See Cruz v. Beto, 92 S.Ct. 1079 (1972); Wier v. Nix, 114 F.3d 817, 820-21 (8th Cir. 1997); Blair-Bey v. Nix 963 F.2d 162, 163-64 (8th Cir. 1992), cert. den., 113 S.Ct. 620 (1992).[14] The plaintiffs do not have a right to worship exclusively with inmates whose beliefs mirror their own. Compare Weir v. Nix, supra, 113 F.3d at 820-21 (fundamentalist separatist Christian prisoner was not entitled to religious advisor whose beliefs were congruent with his own); Bryant v. Gomez, supra, 46 F.3d 948 (9th Cir. 1995) (failure to hold full Pentecostal services did not substantially burden plaintiffs free exercise rights); Blair-Bey v. Nix, supra, 963 F.2d at 164 (prison’s policy of providing a single Islamic advisor did not unreasonably impinge on religious rights of inmates who were members of the Moorish Science Temple (“MST") sect of the Islamic religion); Mohammad v. Umar, supra, 904 F.Sup. at 190-91 (inmate members of The Nation of Islam were not burdened in the exercise of their religion by failure to offer Nation of Islam services where generic Muslim services were offered). Moreover, prison officials may not exclude from a service an inmate who has a sincere belief or interest in the religion because the inmate does not regularly attend services or does not adhere to all of the tenets of the religion. The inclusion of members of The Nation of Islam on the Ramadan list does not impinge on plaintiffs’ free exercise rights.
This is not to say that prison officials may not impose restrictions on the attendance of Muslim inmates belonging to a sect whose methods of participating in communal worship significantly detract from the meaningfulness of the service or pose a security threat. Depending on the level of interference, exclusion of inmates who refuse to modify their conduct may well be justified. However, to the extent that plaintiffs’ claims in this case are predicated on the disruption of services at Shirley by Five Percenters in 1998, the record establishes that in recent years Five Percenters have not sought to participate in Ramadan services, Affidavit of Imam Muhammad, 4, and the issue is therefore moot.
DOC policy requires that all inmates making a request be placed on the Ramadan list regardless of whether they are Muslims or have a sincere interest in the religion. For the reasons set forth below, I find that the requirement that inmates who do not identify themselves as Muslims or otherwise profess to have a sincere interest in the faith be included on the Ramadan list impinges on plaintiffs’ exercise of their First Amendment rights. Moreover, the record is unclear whether the policy in question is limited to Ramadan and the Eid feasts or applies to all religious services and events regardless of denomination, e.g., to Seders and Good Friday services. If, as the record suggests, the policy is limited to Ramadan and the Eid feasts, equal protection rights are implicated.
Subject to legitimate penological interests, DOC is required to provide inmates opportunities to attend meaningful religious services and its regulations so provide. I have found no case which discusses the issue whether mandated inclusion of nonbelievers at religious services impinges on free exercise rights of believers, but the courts’ reasoning in cases involving claims by inmates that they have been excluded from or deprived of communal services is instructive. Those cases have recognized that organized religion is essentially communal in nature and have found that policies or practices that deprive an inmate of the opportunity to participate in meaningful communal services impinge on First Amendment rights. See, e.g., Giampetruzzi v. Malcolm, 406 F.Sup. 836, 843 (S.D.N.Y. 1975); Wilson v. Beame, 380 F.Sup. 1232 (S.D.N.Y. 1974).
It is self evident that meaningful communal services involve participation in shared rituals by people who share a common belief. Pursuant to DOC mandate, Ramadan prayer services and the Eid feasts are open to nonbelievers who do not profess to have a sincere interest in the Islamic faith and whose acknowledged views are in conflict with its central tenets. The presence of such individuals eliminates communality which is an essential component of a meaningful religious service. The DOC policy thus impinges on the exercise of religious rights by plaintiffs and other Muslim inmates. This finding is limited to the facts of *166 this case, Le., a policy that requires that inmates who are not members of and do not have a sincere interest in the Islamic religion be included on the list of those eligible to participate in Ramadan and the Eid feasts. As stated above, prison officials may not lawfully limit attendance to individuals who regularly attend prayer services or whose beliefs are viewed as mainstream or conventional. Inclusion on the Ramadan list of Muslims who do not attend weekly prayer services or whose beliefs are not fully congruent with those of orthodox Muslims does not impinge on plaintiffs’ First Amendment rights.
DOC seeks to justify its policy by pointing to prior litigation under the Religious Freedom Restoration Act (“RFRA”)[15] which resulted in findings that DOC had violated the free exercise rights of individual inmates. See LeMay v. DuBois, 1996 WL 46360 (D.Mass.); Ali v. DuBois, 6 Mass. L. Rptr. 32, 1996 WL 1185051 (Mass. Super.). Critical to those decisions, however, was a finding that DOC had infringed upon a sincerely held religious belief. I am cognizant of the Courts’ obligation to defer to prison officials in matters of prison administration, but DOC’s instruction to the Imams that as a matter of policy they cannot bar anyone from the Ramadan list regardless of belief is not a rational response to these decisions.[16] “[PJrison officials are not required to accommodate an inmate’s religious demands without regard to whether the inmate is actually a member of the religion,” Jackson-Bey v. Hanslmaier, 115 F.3d 1091 (2d Cir. 1997), or has otherwise demonstrated a sincere interest in the religion. See Farid v. Smith, 850 F.2d 917, 926 (2d Cir. 1988); Jackson v. Mann, 196 F.3d 316, 320-21 (2d Cir. 1999)). The DOC policy is an “exaggerated response” to the adverse rulings in Ali v. Dubois and LeMay v. Dubois; it does not bear a reasonable relationship to-legitimate penological interests. Turner v. Safely, supra 107 S.Ct. at 2262.[17]
CONCLUSION AND ORDER
For the reasons stated herein, defendants’ motion for summary judgment is Allowed to the extent 1) that plaintiffs claim that the Department of Correction violated their First Amendment rights by refusing to provide Halaal meat; 2) to the extent that plaintiffs claim that the Department of Correction violated their right to equal protection by providing Kosher meals to Jewish inmates while refusing to provide Halaal meat to Muslim inmates; and 3) to the extent that plaintiffs claim that the defendants violated their First Amendment rights by including on the Ramadan list Muslims who do not regularly attend prayer meetings or whose beliefs do not coincide with their own in all respects. Defendants’ motion for summary judgment is denied and plaintiffs cross motion for summary judgment is allowed on plaintiffs’ claim that the Department of Correction’s policy requiring that inmates who are not Muslims and have not expressed a sincere interest in the Islamic faith be included on the Ramadan list violates their free exercise rights. In all other respects, plaintiffs cross motion for summary judgment is denied. A hearing on the question of an appropriate remedy for the violation will be held via video conference on April 15, 2003.

 When this action was filed, all of the plaintiffs were incarcerated at MCI Shirley. Rashad is now at MCI Norfolk and Abubardar is at the Southeastern Correctional Center at Bridgewater. A fourth plaintiff, Nawshad Ishmael, has been paroled. The policies and practices which are the subject of this motion apply to all DOC facilities and, accordingly, the transfer of two of the plaintiffs to other institutions does not render their claims moot.

 The Massachusetts Civil Rights Act creates no substantive rights; it provides a mechanism for obtaining relief from interference by “threats, intimidation or coercion” with rights conferred by Federal or Massachusetts law. Howcraft v. City of Peabody, 51 Mass.App.Ct. 573 (2001). Section 1983 provides legal redress to individuals who suffer a deprivation of rights secured by the constitution or laws of the United States under color of state law. 42 U.S.C. §1983.

 The weekly congregational prayer service or Jumu’ah is commanded by the Qur’an, the holy book of the Muslim faith. See DOC’s Religious Services Handbook (containing reference materials for DOC employees); O’Lone v. Estate of Shabazz, 107 S.Ct. 2400, 2402 (1987).

 The term “Halaal” means allowed or lawful. It encompasses all things that are not “Haraam,” Le., prohibited or unlawful. Relying on the affidavit of Shakir Mahmoud, Imam at MCI-Norfolk, and Abdallah v. Fard, 974 F.Sup. 1112 (N.D. Ohio 1997), aff'd., 173 F.3d 854 (6th Cir. 1999), defendants argue that the prohibition against eating non-Halaal meat is not a central tenet of the Islamic faith. The Mahmoud affidavit establishes that most Islamic practioners believe that they are forbidden to consume meat that is not Halaal and that there is controversy among Islamic scholars on this issue.

 Ihe Nation of Islam is a branch of Islam.

 In cases involving the free exercise rights of the general citizenry, Massachusetts has rejected the Turner/O’Lone reasonable relationship test and adheres to the compelling interest test. Attorney General v. Desilets, 418 Mass. 316, 321, n.4 (1994). Under that test, where a plaintiff shows that a regulation, practice or policy substantially burdens free exercise rights, the Commonwealth must show that it furthers a compelling state interest and is tailored narrowly in pursuit of that interest. Id. In Abdul-Alazimi v. Superintendent, 56 Mass.App.Ct. 449 (2002), the Appeals Court recognized that Mass. Prisoners’ Ass’n involved claimed infringements of fundamental rights by inmates, but suggested that application of the Turner/O'Lone test (as opposed to the compelling interest test) to claimed violations of art. 46 (prohibiting laws infringing the free exercise of religion) may be an open question.

 The Religious Services Handbook contains reference materials for prison officials; it is not a regulation.

 Relying on the affidavit of Shakir Mahmoud, the Imam at MCI-Norfolk, the Commonwealth argues that Muslims who do not have access to Halaal meat may eat cooked meat after they have said a prayer over it. The record establishes that whether orthodox Muslims are permitted to consume nonHalaal meat in the circumstances of this case, Le., where a nutritionally adequate meatless diet is available, is a matter of controversy among scholars.

 If the plaintiffs had made such a showing, the Court would then determine whether the impingement violated free exercise rights applying the Turner factors.

 I have considered these documents (authored by Fadhel Al-Sahlani and Yosuf G. Kemalli) over the Commonwealth’s *167 objection that they are not competent in that they do not state the qualifications of the signatories and are not signed under pains and penalties of perjury. The contents of these documents are consistent with the Affidavit of Imam Mahmoud submitted by defendants. Imam Mahmoud acknowledges that there is disagreement among Islamic scholars as to whether Muslims are forbidden to consume meat that is not Halaal. In addition, he states that in “restricted” circumstances a Muslim need only pray over a meal and he or she will be forgiven. But he acknowledges that Muslims should endeavor to eat only Halaal meals and he does not define “restricted” as encompassing circumstances when a nutritionally adequate vegetarian Halaal meal is available.

 It is true that the constitutional protection of free exercise rights is not limited to organized religions and that sincerely held beliefs rooted in religion are protected regardless whether they mirror those required by the dogma of established religions. Pielech v. Massasoit Greyhound, Inc., 423 Mass. 534 (1996); Attorney General v. Desilets, supra, 418 Mass. at 323. But plaintiffs do not claim the infringement of an idiosyncratic belief, ie., a belief that is unique to them. They claim that their rights as practitioners of the orthodox Muslim religion are being violated because a meatless diet conflicts with its dietary requirements. The tenets of that religion are a matter of proof by competent evidence. Plaintiffs have submitted as evidence statements of religious scholars to establish the dietary requirements of that religion. They have adduced evidence that there is a genuine controversy among scholars as to certain dietary rules. But the statements submitted by plaintiffs provide no support for the proposition that a meatless diet conflicts with the requirements of Islamic law.

 To the extent that plaintiffs claim a right to receive the prepackaged Kosher meals provided to Jewish inmates, their claim is without merit. The letter of Imam Al-Sahlani which they submitted clearly states that it is not lawful for Muslims to consume Kosher meat.

 In ruling on this issue, I have disregarded arguments in DOC’s various memoranda citing analyses of the comparative costs of Kosher and Halaal diets and describing the dietary requirements of orthodox Jews because DOC has not made part of the record on this motion affidavits or other materials establishing those facts.

 Rashad’s April 2, 2002 affidavit at 7 suggests that DOC is exceeding its obligation to make reasonable efforts to accommodate the religious rights of all inmates by providing separate rooms for members of different Islamic sects to celebrate the Eid feasts. He states that the Muslim community at Norfolk consists of four sects and that “as we were celebrating the Eid Adha . . ., we were in separate rooms, because other individuals could not stand to be in the room with Muslims who practice according to Al-Islam.”

 RFRA was enacted in as a response to the Supreme Court’s decision in Employment Div., Dep't of Human Resources of Or. v. Smith, 110 S.Ct. 1595 (1990). RFRA was declared unconstitutional in City of Buerne v. Florida, 117 S.Ct. 2157 (1997). In 2000, Congress enacted the Religious Land Use and Institutionalized Persons Act (“RLUIPA”), 420 U.S.C. §2000cc et seq. RLUIPA provides that substantial burdens on religious exercise by inmates are valid only if they further a compelling state interest in the least restrictive manner. The Act applies to any “program or activity that receives Federal financial assistance” or when “the substantial burden affects . . . commerce among the several states.” The constitutionality of the statute has been challenged. See, e.g., Mayweathers v. Terhune, 2001 WL 804140 (E.D.Cal.). Plaintiffs have not relied on RLUIPA.

 DOC’s argument that they may not refuse to include on the Ramadan list individuals who are not Muslems is contradicted by their acknowledgment that only sincerely held religious beliefs are entitled to constitutional protection. Denying Christians the opportunity to attend Muslim services does not impinge on their free exercise rights.

 DOC has not made a credible argument that the policy is justified under any combination of the Turner factors.