# United States Court of Appeals for the Fifth Circuit

No. 18-20832

United States Court of Appeals
Fifth Circuit

**FILED**

November 10, 2020

Lyle W. Cayce
Clerk

Noel Turner,

*Plaintiff—Appellant*,

*versus*

Texas Department of Criminal Justice,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-297

Before Graves, Costa, and Engelhardt, *Circuit Judges*.

Per Curiam:*

Texas Department of Criminal Justice inmate Noel Turner sued TDCJ claiming that its policies, which at the time prevented him from always wearing a religious beard and yarmulke, violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Equal Protection Clause, the Due Process Clause, and the First Amendment. *See* 42 U.S.C. § 1983; 42

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 18-20832

U.S.C. § 2000cc-1(a). Turner seeks declaratory and injunctive relief, asking that he always be allowed to grow and keep a four-inch beard and always be allowed to wear a yarmulke.

TDCJ changed its policies during the pendency of his lawsuit. Inmates can now wear religious beards and approved religious headgear at all times. Because Turner has received what he wanted, we affirm the district court's denial of his discovery requests, affirm its grant of summary judgment in TDCJ's favor, and deny his motions for a preliminary injunction and his request for costs.[1]

I.

The affidavit of TDCJ Region I Director Tony O'Hare states that prisoners can now wear four-inch religious beards and never have to shave them for ID photographs. Although voluntary cessation of a challenged activity does not ordinarily deprive a federal court of its power to determine its legality, courts are justified in treating a voluntary governmental cessation of potentially wrongful conduct with solicitude. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009). Such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine. *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988). Government actors in the exercise of their official duties are accorded a presumption of good faith because they are public servants, and without evidence to the contrary, courts assume that formally announced changes to official policy are not mere litigation posturing. *Sossamon*, 560 F.3d at 325.

---

[1] We review the summary judgment decision *de novo* and the denial of the discovery requests for abuse of discretion. *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 936 F.3d 251, 255–56 (5th Cir. 2019); *Milton v. Tex. Dep't of Crim. Just.*, 707 F.3d 570, 572 (5th Cir. 2013).

No. 18-20832

Turner cannot controvert O'Hare's affidavit and has put forth no evidence to overcome the presumption of good faith to which government actors are entitled. Since nothing suggests Turner will be subjected to the same allegedly defective grooming policies again or that TDCJ will reverse the new policies, Turner's religious beard claim is moot.

II.

After Turner filed suit, TDCJ twice changed its religious headgear policy to accommodate a Jewish inmate's need to always wear a yarmulke. Initially, inmates were always allowed to wear yarmulkes purchased (or obtained via donation) from the commissary. But according to exhibits attached to Turner's motions for a preliminary injunction, TDCJ altered the policy again in January 2020 to expressly allow inmates to wear yarmulkes obtained from sources other than the commissary so long as they are white with holes. Those with religious headgear that does not comply with the two policy changes can still wear it in their cells and at religious programs, but it must be carried, and not worn, to and from religious programs.

Turner cannot deny that the current policy allows him to always wear a yarmulke. The question now becomes whether the policy's mandate that the yarmulke either be one that is white with holes or be one obtained from the commissary, which an inmate can purchase for $1.25 or receive via donation, imposes a substantial burden upon Turner's ability to exercise his religious beliefs.

RLUIPA provides that the government shall not impose a substantial burden on the religious exercise of a person residing in or confined to an institution unless the burden furthers a compelling governmental interest and does so by the least restrictive means. 42 U.S.C. § 2000cc-1(a)(1)-(2)(2000). A governmental action creates a substantial burden on a religious exercise if it truly pressures the offender to significantly modify his religious behavior and significantly violates his religious beliefs. *Adkins v. Kaspar*, 393 F.3d 559,

570 (5th Cir. 2004). The effect of a government action is significant when it either influences the adherent to act in a way that violates his religious beliefs or forces the adherent to choose between enjoying a generally available, non-trivial benefit, and following his religious beliefs. *Id.* The fact-specific substantial burden inquiry demands a case-by-case analysis. *Id.* at 571.

RLUIPA does not give prisoners an unfettered right to religious accommodations. *See Cutter v. Wilkinson*, 544 U.S. 709, 723–26 (2005). And Turner does not suffer a substantial burden just because the prison fails to provide all the religious accommodations that he desires. *See Sefeldeen v. Alameida*, 238 F. App'x 204, 206 (9th Cir. 2007). For example, prisoners do not have a right to the religious advisor of their choice. *Blair-Bey v. Nix*, 963 F.2d 162, 163–64 (8th Cir. 1992).

Similarly, Turner does not have a right to wear a particular yarmulke of his choosing at all times. A satisfactory accommodation is the touchstone. *Davis v. Powell*, 901 F. Supp. 2d 1196, 1232 (S.D. Cal. 2012). And requirements that devotional accessories such as religious headgear be obtained through the commissary or meet prescribed standards do not impose a substantial burden upon an inmate's exercise of religious belief because such policies do not prohibit a religious practice but only limit an inmate's preferences. *See Jihad v. Fabian*, No. 09-CV-1604, 2011 WL 1641767, at *1, *8 (D. Minn. May 2, 2011) (finding no substantial burden where inmates could only wear state-approved religious headgear purchased from the commissary); *Thomas v. Little*, No. 07-1117-BRE/EGB, 2009 WL 1938973, at *5 (W.D. Tenn. July 6, 2009) (finding no substantial burden on religious exercise where inmate was required to purchase prayer oils from one supplier).

Turner claims that he cannot afford to purchase a yarmulke from the commissary. But prisons are not required to provide inmates with devotional

accessories. *Cutter*, 544 U.S. at 720 n.8. While Turner claims that he is indigent, the district court pointed out that his inmate account balance totaled $33.81 and $21.56 during the first two months the new religious headgear policy was in effect. Turner does not contend that the purchase requirement itself violates his religious beliefs or that the yarmulke sold in the commissary is deficient. Moreover, the headgear policy as of January 2020 allows inmates to wear yarmulkes obtained from sources besides the commissary, and Turner does not contend that yarmulkes that are white with holes are inadequate for religious reasons.

Though the headgear policy might impose an expense or burden upon prisoners, it neither pressures them to significantly modify their religious beliefs nor violates them. Unlike, for example, requiring inmates to purchase kosher food,[2] the purchase or donation of a yarmulke is neither a frequently reoccurring expense nor a substantial burden on Turner's religious practice.

Again, a reasonable accommodation that provides for the generic tenets of an inmate's faith is all that is necessary considering a prison's limited resources. *See Chance v. Tex. Dep't of Crim. Just.*, 730 F.3d 404, 415–16 (5th Cir. 2013). Turner's primary concern was being able to always cover his head in public, and TDCJ policy now allows him to do so.

---

[2] This claim differs from the claim in *Moussazadeh v. Texas Department of Criminal Justice*, 703 F.3d 781 (5th Cir. 2012), where a prison policy forced inmates who wanted to eat kosher food to purchase those meals. *Id.* at 786. In *Moussazadeh*, the question concerned not the provision of religious items but the provision of food. There we found that denying religiously appropriate food constituted a substantial burden on the exercise of religion because it denied a generally available benefit. *Id.* at 793–94. Food, after all, is an essential benefit given to every inmate regardless of religious belief. *Id.* Thus, the panel in *Moussazadeh* addressed a different question and factual situation.

III.

Turner first raised his claim that the headgear policy violates the Equal Protection Clause in a response to TDCJ's policy advisory and not in the complaint or in a motion to amend the complaint. The district court did not review the claim, most likely because it was raised in a response and was never properly before the court. Similarly, Turner mentions a potential due process claim for the first time on appeal. "Typically, we will not consider on appeal matters not presented to the trial court. Rather, the litigant must raise his argument[s] to such a degree that the district court may rule on [them]." *Harris Cnty., Tex. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 326 (5th Cir. 1999) (internal citations omitted). Turner presents no reason for us to make an exception to our usual practice.

Regardless, the Eleventh Amendment bars Turner from subjecting an agency like TDCJ to suit in federal court absent a waiver. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004); *Aguilar v. Tex. Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998). Section 1983 does not waive sovereign immunity, and there is no indication that TDCJ has waived its immunity. *See Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979). For the reasons above, we do not consider Turner's potential constitutional claims.[3]

IV.

Turner also disputes the district court's denial of his discovery requests for documents that he contends would show that the challenged policies remain in effect. A district court may exercise its "sound discretion" with respect to discovery matters. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Turner, as a party opposing summary judgment, must show that the requested discovery would defeat TDCJ's motion by creating a genuine issue

---

[3] Turner agrees that the district court correctly dismissed his First Amendment claims.

of material fact. *McFaul v. Valenzuela*, 684 F.3d 564, 580 (5th Cir. 2012). He may not rest his argument on vague assertions. *Id.*

The record suggests that Turner either possessed the documents he wanted or had been alerted to their content when he filed his discovery requests. The documents add nothing new as they either detail the updated grooming policy or address a policy that was superseded by it. Most importantly, nothing shows that Turner, or any other inmate, has been required to shave or been barred from wearing a complying yarmulke since TDCJ implemented its new policies. Because Turner failed to show that these records would defeat TDCJ's motion for summary judgment, the district court did not abuse its discretion in denying them.

## V.

We deny Turner's request for costs. TDCJ's policy changes alone do not render him a prevailing party, and he has not prevailed on any of his claims. 42 U.S.C. § 1988(b); *Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008).

AFFIRMED and motions for a preliminary injunction DENIED.